Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| MXP OPERATING, LLC | § | |
| | § | Case no.23-41446-11 |
| | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**DISCLOSURE STATEMENT OF MXP OPERATING, LLC PURSUANT TO SECTION 1125**
**OF THE BANKRUPTCY CODE DATED JANUARY 25, 2024**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

MXP Operating ,LLC ("MXP" or "Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on August 11, 2023. At the time of the filing the Debtor was an operator of oil & gas wells.  The Debtor proposes to restructure its current indebtedness and continue operations to provide a dividend to the creditors of Debtor.

## **Purpose of Disclosure Statement; Source of Information**

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated January 25, 2024 ("Plan"). This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

## **Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## **Explanation of the Process of Confirmation**

Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 6 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 5 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 5. Each holder of an Allowed Claim in Classes 2 through 5 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

**Cramdown**

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as **Exhibit "A"**.]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtor, unless specifically stated to be from other sources.

**NO REPRESENTATIONS CONCERNING THE DEBTORS IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT**

GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

### III

### FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtor

MXP Operating, LLC ("MXP") is a Wyoming limited liability company formed on January 31, 2020 and is registered to conduct business with the State of Oklahoma and Texas as of on or about March 18, 2020. MXP's primary purpose of business is to serve as the operator for oil and gas assets located in Seminole, Oklahoma and is responsible for the overall management and execution

of drilling projects and the production of hydrocarbons. MXP currently operates 7 completed wells—ASE 1, ASE2, ASE3, ASE4, JK1, JK2 and ODDFELLOWS A1—as well as 3 non-completed wells—the Lois1, Lois2 and Royan K2. The current Managing Member of MXP is Rachel T. Patman, a Texas native and resident of Dallas County.

Prior to filing for Chapter 11 protection, the debtor was involved in a lawsuit with Alpha Seven Energy, a DBA of Seven Energy Investments, LLC ("ASE"), a Texas-based limited liability company formed to raise money for and promote various oil and gas investment ventures. ASE and its CEO Chris Hemsworth ("Mr. Hemsworth"), an Australian native who now resides in Dallas County, and MXP, by and through its Operations Manager Michael Patman ("Mr. Patman"), a Texas native and resident of Hill County, entered into a business arrangement for the exploration and production of oil and gas through drilling conventional oil and gas wells in Seminole County, Oklahoma.

On or about February 21, 2020, the parties ASE and MXP signed a Joint Operating Agreement ("JOA") to drill only the ASE1, ASE2, ASE3, ASE4, Lois1, Lois2 and Royan K2 wells ("JOA Wells"). ASE gained working interest ("WI") under the JOA and MXP would serve as Operator, directed by Mr. Patman. Around the same time, ASE engaged MXP to drill a well in Roberts County, Texas. Also under Mr. Patman's direction, MXP would serve as a General Contractor under the operator ASE Operations, LLC ("ASE Operations") and provide the expertise required to construct a drilling program and drill a leasehold well that would hold ASE's position in a Farmout Agreement ("Farmout") between ASE and other third parties.

During the initial stages of the business relationship in 2020, MXP was to drill the JOA Wells in Seminole down to the contract target depths, governed by Turnkey Contracts ("Turnkey"). Upon further geological analysis and with the approval of ASE, the companies decided to expand the scope of its operations on the JOA Wells and drilled to other target depths that demonstrated production potential. Over the courses of the next two years, MXP conducted further operations and completed each well with the approval of ASE, authorized by Mr. Hemsworth through various communications, including video updates, WhatsApp messages, email, phone conference calls and in-person meetings.

By mid-to-late 2022, however, the business relationship between MXP and ASE began to breakdown and funding for the authorized capital expenditures either ceased or slowed dramatically, making continued operations virtually impossible. At the behest of ASE, MXP attempted to bridge the gap between funding disbursements by promising to pay vendors, taking out company loans and extending lines of credit. At some point, it became clear that ASE did not intend to pay MXP their share of the outstanding accounts receivables, to the tune of approximately $7.1 million. ASE then claimed that not only did it not owe any money to MXP, but that MXP fraudulently created invoices to unjustly enrich itself and sued MXP first in the United States District Court in Oklahoma on or about October 21, 2022. The case was then removed to Oklahoma State District Court shortly after.

On or about August 11, MXP filed for Chapter 11 protection under the Bankruptcy Code in order to stave off unpaid vendors and litigation matters impeding MXP's ability to operate their

leasehold wells.

## Post Petition Operations

Since the filing of the bankruptcy, the Debtor has continued to operate the wells in Oklahoma. The Debtor has filed a Motion with the Bankruptcy Court to assume the current Joint Operating Agreement ("JOA") with HKMF on the wells. MKMF has objected to the Debtor assuming the JOA. The Court has not yet ruled on the Debtor's assumption of the JOA. The Debtor has been operating under a cash collateral Order entered into with HKMF who asserted they are the working interest holders in the wells operated by Debtor and have an interest in the production of the wells. The Debtor has delivered $100,000 to HKMF which is being held pursuant to an Order of the Court. After the case was filed, an Ad Hoc Committee of Trade Creditors ("Committee") has appeared in the case and has asserted various claims and rights including a superior right to the funds held by HKMF and an interest in the cash collateral. Additionally, the Debtor has sought to compel the return of a drilling rig which the Debtor asserts it has a 50% ownership interest in. Additionally, the Debtor has been informed by the Committee that the Committee believes causes of action exist against HKMF. The Debtor believes that HKMF owes the Debtor substantial funds. At the present time, the Debtor is operating and generating funds.

## Future Income and Expenses Under the Plan

The Debtor's current business operations consist of the income derived from serving as operator on wells. The Debtor also may have various causes of action including a claim against HKMF for lose of a valuable farm out agreement and claims of unpaid invoices due the Debtor.

The Debtor's projections for ongoing operations are attached as Exhibit B.

## Post-Confirmation Management

Upon Confirmation of the Debtors' Plan, current ownership will maintain its status.

IV.
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor owns cash, and equipment. The value of the assets of the Debtor, if liquidated, would cover the secured creditor debt and provide a dividend to the unsecured creditors. The Debtor would show that the continued operations of the Debtor as proposed in this plan will provide the unsecured creditors with at least as such as they would recover if the Debtor were liquidated.

A liquidation analysis of the Debtors assets is attached hereto as Exhibit "C".

## V.
## SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtors' Plan will break the existing claims into 6 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles 5 and 6 of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests.    On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.  Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals  and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan.  Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $50,000  including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Tax Claim of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The Allowed Amount of  Tax Creditor Claims of the Internal Revenue Service ("IRS")shall be paid out of the continued operations of the business. The IRS has filed a Priority Tax Claim in the amount of $58,000. The IRS claim is based solely upon certain unfiled returns. The Debtor would show upon the filing of the returns there will not be any amounts due the IRS, However, to the extent and  IRS  priority claim exists  it will be paid in 60 equal monthly installments with interest at the rate of 8% per annum commencing on the Effective Date.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

( a )   If the Debtor fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

( b )   If the United States declares the Debtor to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

( c )   If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

( d )   The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

( e )   All payment will be sent to: Chastina McMillion, IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 2 Claimant is impaired under this Plan.

**Class 3 Claimant (Allowed Claims of Employee Wage Creditors)** are impaired and shall be satisfied as follows: The Debtor was unable to pay wages to employees prior to the bankruptcy filing. Pursuant to the Bankruptcy Code, employees who were owed wages for the time period of 180 days prior to the Petition Date are entitled to received those wages as a priority claim up to a

maximum of $15,150 per employee. The Class 3 creditors shall be paid their priority claims after payments of the Class 1 and Class 2 creditors. The Class 3 claimants shall receive their pro rata share of the Net Operating Income until their allowed Class 3 claims have been paid in full. Any amount owed an employee over the priority limit of $15,150 will be treated as a Class 4 creditor.

The Class 3 Claimants are impaired under this Plan.

**Class 4 Claimants (Allowed Secured Claims)** are impaired and shall be satisfied as follows: The following creditors have filed Proofs of Claim asserting liens against the production on the wells operated by the Debtor: Advanced Product & System Technology [Proof of Claim #1]; Imcooter Data LLC [Proof of Claim #5]; Quasar Energy Services, LLC [Proof of Claims # 21 and 22]; Scientific Drilling International, LLC [Proof of Claim #24]; Smith International, Inc. [Proof of Claim #25]; and Gyrodate Incorporated [Proof of Claim #32]. The Allowed Secured Proofs of Claim against the Debtor's interest in the Oklahoma wells will be paid in accordance with their filing priority after payments of the Class 1 through 3 claimants are complete. Any asserted secured Proof of Claim purported to be secured by Debtor's interest in any Texas wells shall be treated solely as a Class 5 creditor.

The Class 4 Claimants are impaired under this Plan.

**Class 5 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All Allowed claims of unsecured creditors will be paid in on a pro rata basis for the Net Operating Income on a monthly basis after payments to the Class 1 through 4 creditors have been completed. The Debtor shall make payments on a monthly basis until all Allowed Unsecured claims have been paid in full either from the Next Operating Income, the Liquidation Trust, or a combination of the two. The unsecured creditors payments will continue so long as the wells continue to produce in viable quantities and/or the Litigation Trust continues to produce recoveries.

The Class 5 Claimants are impaired under this Plan.

**Class 6 (Current Working Interest Holders)** are not impaired under the Plan and shall be satisfied as follows: The current working interest holders shall retain their existing interests.

The Class 6 working interest holders are not impaired under this Plan.

ARTICLE VI
**MECHANICS/IMPLEMENTATION OF PLAN**

Debtor anticipates the use of the cash on hand and the continued operations of the business to fund the Plan. In addition to the funds generated from operations, the Debtor will establish a Litigation Trust which will have the authority to pursue litigation matters for the benefit of all creditors.

Upon entry of the Confirmation Order, all Causes of Action shall be deemed assigned to the Litigation Trust and become the property of such trust to prosecute, settle, or dismiss as the Litigation Trustee determines is appropriate, subject to the express terms of the Plan and the Litigation Trust. All Causes of Action shall vest in the Litigation Trust on the Confirmation Date free and clear of any and all liens and/or security interests. The Litigation Trustee shall be, for purposes of the Causes of Action and the other duties and powers assigned to the Litigation Trustee under this Plan, the representative of the estate under §1123(b)(3) of the Code. None of the following shall impair, limit, estop, prejudice or prevent the assertion or prosecution of any Cause of Action by the Litigation Trust: (a) the assessments or opinions of the Debtor set forth in this Plan, in any prior version of the Plan, in any of Debtor's schedules, or in any other document filed in this case; (b) any testimony of a representative of Debtor given in this case, including any statements regarding the value or merits of any Cause of Action or the applicability of any defense to a Cause of Action; or (c) the failure of Debtor to describe or list any Cause of Action in Debtor's schedules filed in this case, or in any other filing in this case. No Cause of Action against any Person or Entity shall be discharged, released, or compromised pursuant to the Plan or the Confirmation Order, unless expressly stated otherwise therein.

The three largest undisputed unsecured creditors who agree to serve shall constitute the Administrative Committee of the Litigations Trust. The Administrative Committee shall, by majority, elect the Litigation Trustee. The Trustee shall be appointed by the Administrative Committee prior to the date first set for confirmation of the Debtor's Plan.

The terms and conditions of the Litigation Trust are attached hereto as Exhibit D.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances

or rejection of this Plan or the offer, issuance, sale or purchase of securities.

## VII.
## FEASIBILITY OF PLAN

The Debtor currently has approximately $60,000 on hand to maintain operations and to make payments under the Plan. The Debtor's projection of the amounts available to provide for payments under the Plan are attached hereto as Exhibit B.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article 14 of the Plan.

## IX.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. The Debtor's current assets consist of interest in two drilling rigs and its ability to continue as an operator to pay the claims under this bankruptcy. If the case were converted to a Chapter 7 proceeding the Debtor would not have the ability to continue operations and provide for the creditors.

A liquidation analysis is attached hereto as Exhibit "C".

## X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims. The Plan assumes that the Debtors will be able to keep the operations at the levels set for in the projections. .

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. In this case, the Plan anticipates that all creditors will  be paid in full.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## XII.
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor believes claims exist that can be brought for the benefit of the estate. The Debtor shall assign any and all rights, claims and causes of action to the Litigation Trust to be pursued for the benefit of the unsecured creditors. .

Dated: January 19, 2024.

Respectfully submitted,

MXP Operating LLC

By: Rachel Patman
Its: Managing Member

CURRENT ASSET OF DEBTOR - EXHIBIT C

| ASSETS | chapter 7 | chapter 11 |
|---|---|---|
| CASH | $60,000 | 60,000 |
| RIGS | 1,000,000 | 1,000,000[1] |
| LITIGATION CLAIMS[2] | ukn | ukn |
| TOTAL | | |

| LIABILITIES | | |
|---|---|---|
| ADMINISTRATIVE | 100,000 | 50,000 |
| TAXES | 58,000 | 58,000 |

---

[1]There are competing claims concerning the Debtor's ownership of the Debtor's interest in the rigs.

[2]The Litigation Claims are highly contested and the value is speculative

| | | |
|---|---|---|
| EMPLOYEE | 100,000 | 100,000 |
| UNSECURED CREDITORS | 8,600,000 | 8,600,00 |
| | | |
| TOTAL | 0 | 100%[3] |

---

[3]Unsecured creditor will be paid from production and recovery up to 100% of their allowed claims.

DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED JANUARY 25, 2024 - Page 15

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| MXP OPERATING, LLC | § | |
| | § | Case no. 23-41446-11 |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF MXP OPERATING, LLC.**

**TO:ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, MXP Operating, LLC, Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and propose the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtors into 5 separate classes.

## ARTICLE I

**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.    **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar

Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of these Cases, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.   When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.      **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of these Cases, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this Cases other than Administrative and Priority Claims or Rejection Claims. Any Administrative or Priority Claims must be asserted with 30 days of the Confirmation Date or they will be barred.

6.      **"Case"** shall mean the above-styled Chapter 11 cases.

7.      **"Claim"** shall mean any right to payment from the Debtors as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.      **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.      **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.      **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.      **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over this Chapter 11 reorganization Case, or any successor court of competent jurisdiction.

14.      **"Creditor"** shall mean any person having a Claim against Debtor.

15.      **"Debt"** shall mean any obligation of Debtors, alone, and any obligation of Debtors and any other Person, to any Entity.

16.      **"Debtor"** shall mean, MXP Operating ,LLC.

17.      **"Disbursing Agent"** shall mean the Reorganized Debtor.

18.      **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.      **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.      **"Equity Interest Holders"** shall mean holders of any equity interests in the Debtors.

21.      **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.      **"Net Operating Income"** shall be all funds received from the sale of hydrocarbons after payment of allowed expenses under the Operating Agreement.

23.      **"Operating Agreement"** shall mean that certain Model Form Operating Agreement dated February 21, 2020 executed  by MXP Operating, LLC and Seven Energy Investments, LLC.

24.      **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

25.      **"Petition Date"** shall mean the date on which the Debtors filed this proceeding, August 11, 2023.

26.      **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

27.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtors post-petition in the ordinary course of business.

28.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

29.     **"Reorganized Debtor"** shall mean the entity or person which shall assume title to and control of the Debtor's assets and liabilities upon confirmation as provided herein.

30.     **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

31.     **"Substantial Consummation"** shall occur upon Reorganized Debtors' commencement of payments to creditors as provided in this Plan.

32.     **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtors under this Plan.

33.     **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1     **Claims and Debts**:  Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtors of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.  Claims and Debts incurred by the Debtors post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtors according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants must file a proof of claim bearing the one or more of the number of the above-styled and referenced proceedings with the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, on or before the

Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan. Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4     **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtors or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

### ARTICLE 3
### TREATMENT OF UNCLASSIFIED CLAIMS
### (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations, including ad valorem taxes for year 2024, incurred in the normal course of business by the Debtors on or after the Petition Date will be paid when due in the ordinary course of the Debtors' business unless a different time for payment is specified in this Plan.

3.2     Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

### ARTICLE 4
### DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims: This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof. Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtors of whatever character, whether allowed by the Court or otherwise.

4.2     **Class 1**:     Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)

**Class 2**:     Consists of **Allowed Claims of the Internal Revenue (Impaired)**

**Class 3**:     Consists of **Allowed Claims of Employee Wage Creditors** (Impaired)

**Class 4**:     Consists of **Allowed Unsecured Creditors** (Impaired)

**Class 5:**     Consists of **Allowed Working Interest Holder Claims** (Not Impaired)

### ARTICLE 5
### TREATMENT OF CLASSES

5.1     **Satisfaction of Claims and Debts**: The treatment of and consideration to be

received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtors subject to the provisions herein.   On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals  and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $50,000  including Section 1930 fees.   Section 1930 fees shall be paid in full prior to the Effective Date.   The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

5.3     **Class 2 Claimants (Allowed Tax Claim of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The Allowed Amount of  Tax Creditor Claims of the Internal Revenue Service ("IRS")shall be paid out of the continued operations of the business. The IRS has filed a Priority Tax Claim in the amount of $58,000. The IRS claim is based solely upon certain unfiled returns. The Debtor would show upon the filing of the returns there will not be any amounts due the IRS, However, to the extent and  IRS  priority claim exists  it will be paid in 60 equal monthly installments with interest at the rate of 8% per annum commencing on the Effective Date.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

( a )     If the Debtor fails to make any Plan payments, and  deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

( b )     If the United States declares the Debtor to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

( c )     If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed

without recourse to the Bankruptcy Court and without further notice to the Debtor.

( d )   The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

( e )   All payment will be sent to: Chastina McMillion,  IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 2 Claimant is impaired under this Plan.

5.4   **Class 3 Claimant (Allowed Claims of Employee Wage Creditors)** are impaired and shall be satisfied as follows:  The Debtor was unable to pay wages to employees prior to the bankruptcy filing. Pursuant to the Bankruptcy Code, employees who were owed wages for the time period of 180 days prior to the Petition Date are entitled to received those wages as a priority claim up to a maximum of $15,150 per employee. The Class 3 creditors shall be paid their priority claims  after payments of the Class 1 and Class 2 creditors. The Class 3 claimants shall receive their pro rata share of the Net Operating Income until their allowed Class 3 claims have been paid in full. Any amount owed an employee over the priority limit of $15,150 will be treated as a Class 4 creditor.

The Class 3 Claimants are impaired under this Plan.

5.5   **Class 4 Claimants (Allowed Secured Claims)** are impaired and shall be satisfied as follows:

The following creditors have filed Proofs of Claim asserting liens against the production on the wells operated by the Debtor: Advanced Product & System Technology [Proof of Claim #1]; Imcooter Data LLC [Proof of Claim #5]; Quasar Energy Services, LLC [Proof of Claims # 21 and 22]; Scientific Drilling International, LLC [Proof of Claim #24]; Smith International, Inc. [Proof of Claim #25]; and Gyrodate Incorporated [Proof of Claim #32]. The Allowed Secured Proofs of Claim against the Debtor's interest in the Oklahoma wells will be paid in accordance with their filing priority after payments of the Class 1 through 3 claimants are complete. Any asserted secured Proof of Claim purported to be secured by Debtor's interest in any Texas wells shall be treated solely as a Class 5  creditor.

The Class 4 Claimants are impaired under this Plan.

5.6   **Class 5 Claimants (Allowed  Unsecured Claims)** are impaired and shall be satisfied as follows: All Allowed claims of unsecured creditors will be paid in on a pro rata basis for the Net Operating Income on a monthly basis after payments to  the Class 1 through 4 creditors have been completed.  The Debtor shall make payments on a monthly basis until all Allowed Unsecured claims have been paid in full either from the Next Operating Income, the Liquidation Trust, or a combination of the two. The unsecured creditors payments will continue so long as the wells continue to produce in viable quantities and/or the Litigation Trust continues to produce recoveries.

The Class 5 Claimants are impaired under this Plan.

5.7    **Class 6 (Current Working Interest Holders)** are not impaired under the Plan and shall be satisfied as follows: The current working interest holders shall retain their existing interests.

The Class 6 working interest holders are not impaired under this Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1    **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2    **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the funds on hand, the ongoing operations of the Reorganized Debtor and the establishment of a Litigation Trust.

6.3.    Upon entry of the Confirmation Order, all Causes of Action shall be deemed assigned to the Litigation Trust and become the property of such trust to prosecute, settle, or dismiss as the Litigation Trustee determines is appropriate, subject to the express terms of the Plan and the Litigation Trust. All Causes of Action shall vest in the Litigation Trust on the Confirmation Date free and clear of any and all liens and/or security interests. The Litigation Trustee shall be, for purposes of the Causes of Action and the other duties and powers assigned to the Litigation Trustee under this Plan, the representative of the estate under §1123(b)(3) of the Code. None of the following shall impair, limit, estop, prejudice or prevent the assertion or prosecution of any Cause of Action by the Litigation Trust: (a) the assessments or opinions of the Debtor set forth in this Plan, in any prior version of the Plan, in any of Debtor's schedules, or in any other document filed in this case; (b) any testimony of a representative of Debtor given in this case, including any statements regarding the value or merits of any Cause of Action or the applicability of any defense to a Cause of Action; or (c) the failure of Debtor to describe or list any Cause of Action in Debtor's schedules filed in this case, or in any other filing in this case. No Cause of Action against any Person or Entity shall be discharged, released, or compromised pursuant to the Plan or the Confirmation Order, unless expressly stated otherwise therein.

The three largest undisputed unsecured creditors who agree to serve  shall constitute the Administrative Committee of  the Litigations Trust. The Administrative Committee shall, by majority,  elect the  Litigation Trustee. The Trustee shall be appointed by the Administrative Committee prior  to the date first set for confirmation of the Debtor's Plan.

The terms and conditions of the Litigation Trust are attached as  Exhibit D to the Disclosure Statement.

6.4    Notwithstanding anything contained herein, the Reorganized Debtors shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected. Under the terms of this Plan, the current Operating Agreement is specifically assumed. The Debtor shall operate under the terms of the existing Operating Agreement.  In the event the Debtor is removed as operator under the Operating Agreement, any subsequent operator shall be bound by the terms of this Plan.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtors.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3.     Default shall occur if one scheduled Plan payment is not made by Debtors or if post-petition taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent via facsimile to Rachel Patman at RPatman@patmanlaw.com. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (I) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3    NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER DEBTORS, REORGANIZED DEBTORS, GUARANTORS, THE OFFICERS AND DIRECTORS OF THE DEBTORS NOR THE PARTNERS SHALL BE DISCHARGED AND RELEASED FROM ANY LIABILITY FOR CLAIMS  UNDER THIS PLAN. FOR THE AVOIDANCE OF DOUBT NO THIRD PARTY INJUNCTIONS WILL BE AFFORDED TO DEBTORS, REORGANIZED DEBTORS, GUARANTORS, THE OFFICERS AND DIRECTORS OF THE DEBTORS NOR THE PARTNERS.

### ARTICLE 11
### AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11.  The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the Cases may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

### ARTICLE 12
### EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtors, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures  and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(I) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1     The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2     Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtors against any Entity.

13.3     Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4     Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until these Cases are closed, the Court retains jurisdiction of the following matters only:

14.1     To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2     To allow or disallow Claims.

14.3     To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4     To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5     To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6     To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7     To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8     To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9     To hear and determine any core proceeding, whether such proceeding is brought

before or after the Effective Date.

14.10   To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11   To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12   To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13   To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing these Cases. The Debtor shall attempt to close the Case within 6 months of the Effective Date.


Respectfully submitted,


MXP Operating, LLC.

By: Rachel Patman
Its: Managing Member

# LITIGATION TRUST AGREEMENT FOR MXP OPERATING, LLC

This Trust Agreement for the MXP Operating ,LLC Litigation Trust (the "Trust Agreement"), is made as of the Effective Date of the Plan for the benefit of the Litigation Trustee (as defined herein) and the General Unsecured Creditors.

## RECITALS

This Trust Agreement is entered into to facilitate implementation of the Plan. Under the Plan, the Trust Property has been transferred to the Trust created and evidenced by this Trust Agreement so that: (i) the Trust Property can be held in trust for the benefit of the Beneficiaries (as defined herein) as a litigation trust for the objectives and purposes set forth in the Plan and this Trust Agreement, (ii) the Causes of Action can be resolved, (iii) Distributions can be made in accordance with the Plan, (iv) the Trust Property (as defined herein) can be liquidated, and (v) administrative services and expenses relating to the activities of the Trust can be performed and paid by the Litigation Trustee.

## DECLARATION OF TRUST

For good and valuable consideration, including confirmation of the Plan, Debtor and the Trustee have executed this Trust Agreement for the benefit of the Beneficiaries entitled to the Trust Property. Debtor hereby assigns and transfers to the Trustee, and the Trustee's successors or assigns, all right, title, and interest in and to the Trust Property:

(a)     to have and to hold unto the Trustee and the Trustee's successors, and assigns in trust under and subject to the terms and conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries of the Trust, and for the performance of and compliance with the terms of the Plan and this Trust Agreement;

(b)     provided, however, that on termination of the Trust, this Trust Agreement shall cease, terminate, and be of no further force and effect.

The Trust Property is to be held and distributed by the Trustee subject to the further covenants, terms, and conditions set forth below.

## ARTICLE I: DEFINITIONS

**1.01 Definitions**. All capitalized terms not otherwise defined in this Trust Agreement have the meanings ascribed to them in the Plan. Any capitalized term used in this Trust Agreement that is not defined in the Plan has the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, whichever is applicable. In addition to the other terms defined above, the following terms have these meanings when used in this Trust Agreement:

"Administrative Committee"[1] means the following holders of General Unsecured Claims: (1) Advanced Products & Systems Technology, (2) Yellow Jacket Oilfield Services, Inc. Inc, and (3) XP Oilfield Consultants, LLC. at this time.

"Bankruptcy Case" means the Chapter 11 Bankruptcy Proceeding of MXP Operating ,LLC., commenced under Case No. 23-41446 in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"Bankruptcy Court" means The United States Bankruptcy Court for the Eastern District of Texas.

"Beneficiaries" mean the holders of Allowed General Unsecured Claims included in Class 5 under the terms of the Plan.

"Distribution" means a distribution of cash pursuant to the terms of this Trust Agreement, to take place as provided for herein.

"Effective Date" is defined in the Plan.

"Causes of Action" are defined and described in the Plan.

"Litigation Trustee" or "Trustee" means the Person appointed to serve in such capacity in accordance with the terms of this Trust. The initial Litigation Trustee is _____.

"Plan" means the Plan of Reorganization of MXP Operating, LLC. Pursuant to Section 1121 of the Bankruptcy Code dated January 25, 2024, as such plan may from time-to-time be modified by order of the Bankruptcy Court.

"Trust" means this litigation trust named "The MXP Operating, LLC  Litigation Trust."

"Trust Property" means (a) any and all Causes of Action and the net proceeds thereof, (b) the initial cash contribution to the Trust of $10,000.00 made by Debtor to the Trust on the Effective Date, (c) any and all documents and records of any Debtor relevant to or related to any Cause of Action including, but not limited to, bank statements, canceled checks, debit and ACH transfer advices, credit card statements, and (d) and any other assets acquired by the Trust or designated by the Debtor to be included in the Trust.

---

[1]The three largest undisputed  unsecured creditors.

**TRUST AGREEMENT FOR THE MXP OPERATING, LLC LITIGATION TRUST, PAGE 2**

## ARTICLE II: THE TRUST

**2.1** **Creation and Name.** There is hereby created the Trust, which shall be known as "The MXP Operating LLC  Litigation Trust."

**2.2** **Objectives and Purposes.** The general purpose of the Trust established under the Trust Agreement is to provide a mechanism for the liquidation of the Trust Property, and to distribute the proceeds of the liquidation, net of all Claims, expenses, charges, liabilities, and obligations of the Trust, to the Beneficiaries in accordance with the terms of this Trust Agreement. The Trust will not conduct or engage in any trade or business activities, other than those associated with or related to the liquidation of the Trust Property, the objection to and/or estimation of Claims, and the Distributions to the Beneficiaries. In furtherance of that objective, the Litigation Trustee shall make continuing best efforts to: (i) liquidate the Trust Property, (ii) object to Claims, (ii) when determined by the Litigation Trustee to be advisable, file motions to estimate Claims for purposes of making Distributions, (iv) make Distributions, and (v) not unduly prolong the duration of the Trust, all in accordance with this Trust Agreement. The purposes of the Trust include, but are not limited to the following:

(a) marshaling, liquidating, and distributing the Trust Property in an expeditious and orderly manner;

(b) performing the functions and taking the actions provided for or permitted by this Trust Agreement;

(c) serving as the "representative of the estate" under 11 U.S.C. §1123(b)(3)(B);

(d) prosecuting, settling, or abandoning the Causes of Action transferred and assigned to the Trust under the Plan as Trust Property and to distribute the net proceeds of any recoveries thereon (after payment of any legal fees and/or costs associated with such recoveries) in accordance with the terms of the Plan and this Trust Agreement; and

(e) reconciling, objecting to, prosecuting, estimating, or settling General Unsecured Claims, if necessary, to determine the appropriate amount of Distributions to the made to the Beneficiaries under this Trust Agreement.

**2.3** **Acceptance.** The Litigation Trustee accepts the Trust imposed under the Trust Agreement, and agrees to observe and perform that Trust on and subject to the terms and conditions set forth in the Plan and this Trust Agreement.

**2.4** **Further Assurances.** The Debtor will, on reasonable request of the Litigation Trustee and subject to the terms of the Plan Confirmation Order, execute, acknowledge, and deliver such further instruments and do such further acts that may be necessary or proper to transfer to the

Litigation Trustee any portion of the Trust Property intended to be conveyed under this Trust Agreement in the form and manner provided for in the Plan and to vest in the Litigation Trustee the powers, instruments, or funds in trust.

     **2.5**    **Incidents of Ownership**. The Beneficiaries shall be the sole beneficiaries of the Trust, and the Litigation Trustee shall retain only such incidents of ownership necessary to undertake the actions and transactions authorized under the Plan or this Trust Agreement.

## ARTICLE III: THE LITIGATION TRUSTEE

     **3.1**    **Number and Qualifications.** Except as otherwise provided in this Trust Agreement, there shall be one (1) Litigation Trustee of the Trust. The Litigation Trustee is the Person nominated by and approved by a majority of the Administrative Committee. The Litigation Trustee shall not be required to post a fidelity bond or a surety, but may do so in the Litigation Trustee's sole discretion. All costs and expenses of procuring any fidelity bond or surety shall be paid as a cost and expense of the Trust. The Litigation Trustee shall be entitled to engage in such other activities as the Litigation Trustee deems appropriate and that are not in conflict with the interests of the Trust, and the Litigation Trustee shall devote such time that is necessary to fulfill all of its duties as Litigation Trustee.

     **3.2**    **Action by Litigation Trustee**. The Trust shall be managed by the Litigation Trustee, in accordance with the provisions set forth in this Agreement.

     **3.3**    **Binding Nature of Litigation Trustee's Action**. All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of the Plan and this Trust Agreement shall be final and binding on all Beneficiaries.

     **3.4**    **Terms of Service**. The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Trust, subject to earlier death, resignation, or removal.

     **3.5**    **Resignation**. The Litigation Trustee may resign such position only by a written instrument filed with the Bankruptcy Court at least sixty (60) days before the proposed effective date of the resignation. The Litigation Trustee shall continue to serve as Litigation Trustee after the filing of the resignation until the proposed effective date, which shall be the effective date of appointment (if any) of a successor Litigation Trustee in accordance with the applicable provisions of the Plan and this Trust Agreement. Nothing contained in this section shall restrict the right to remove the Litigation Trustee as provided in the Plan or this Trust Agreement.

     **3.6**    **Removal**. The Litigation Trustee may be removed from office only for: (i) fraud, willful misconduct, or gross negligence in connection with the Litigation Trustee's duties under this Trust Agreement; (ii) a physical or mental disability that substantially prevents the Litigation Trustee from performing its duties under the Plan; or (iii) cause, including, but not limited to, a

breach of fiduciary duty or an unresolved conflict of interest, other than as specified in the foregoing clauses (i) and (ii). After removal pursuant to this section, the Litigation Trustee shall continue to serve as the Litigation Trustee until the effective date of the appointment of a successor Litigation Trustee in accordance with this Trust Agreement.

**3.7    Appointment of Successor Litigation Trustee.**

**3.7.1    Appointment of Successor Litigation Trustee.** In the event of a vacancy by reason of death or removal of the Litigation Trustee or prospective vacancy by reason of resignation, the Administrative Committee, by majority vote, may appoint a successor Litigation Trustee. If the Administrative Committee refuses or is unable to appoint a successor Litigation Trustee, any member of the Administrative Committee may file a pleading with the Bankruptcy Court seeking the appointment of a successor Litigation Trustee, which shall be appointed by the Bankruptcy Court (after notice and a hearing) as soon as practicable.

**3.7.2    Vesting of Rights in Successor Litigation Trustee.** Every successor Litigation Trustee appointed under this Article shall execute, acknowledge, and deliver to the Trust, the Trust Committee, and the retiring Litigation Trustee, if any, an instrument accepting the appointment subject to the terms and provisions of the Plan and this Trust Agreement. The successor Litigation Trustee may, in its sole discretion, provide a fidelity bond or surety as provided in this Trust Agreement. The successor Litigation Trustee, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the Litigation Trustee, except that the successor Litigation Trustee shall not be liable for the acts or omissions of any prior Litigation Trustee.

**3.8    Continuance of Trust.** The death, resignation, or removal of the Litigation Trustee shall not operate to: (i) terminate the Trust created by this Trust Agreement, (ii) revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created under this Trust Agreement, or (iii) invalidate any action taken by the Litigation Trustee. The Litigation Trustee agrees that the provisions of this Trust Agreement shall be binding on, and inure to the benefit of, the Litigation Trustee and its heirs, legal and personal representatives, successors or assigns, as the case may be. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly: (i) execute and deliver by the effective date of resignation or removal, any documents, instruments, and other writings that may be reasonably requested by the successor Litigation Trustee to effect the termination of the resigning or removed Litigation Trustee's capacity under this Trust Agreement and the conveyance of the Trust Property then held by the resigning or removed Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all documents, instruments, records, and other writings relating to the Trust that may be in the possession or under the control of the resigning or removed Litigation Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Litigation Trustee's obligations and functions by the successor Litigation Trustee. The

resigning or removed Litigation Trustee hereby irrevocably appoints the successor Litigation Trustee as its attorney-in-fact and agent with full power of substitution for it and its name, place, and stead to do any and all acts that such resigning or removed Litigation Trustee is obligated to perform.

      **3.9**    **Compensation**. As compensation for services as Litigation Trustee, the Litigation Trustee shall receive reasonable compensation for all services rendered based upon time incurred and the ordinary hourly rates of the person providing services. The Litigation Trustee shall also be entitled to reimbursement of all out-of-pocket expenses. All fees and costs of the Litigation Trustee shall be paid out of the Trust Property. Further, the Litigation Trustee shall submit regular statements supporting any fees or costs for review by the Administrative Committee. In the event that a Member of the Administrative Committee objects to the fees or costs of the Litigation Trustee that cannot be informally resolved, the objecting Administrative Committee member may file an objection with the Bankruptcy Court and the Bankruptcy Court may determine the reasonable amount of fees and costs to be paid to the Litigation Trustee.

      **3.10**    **Standard of Care; Indemnification; Exculpation**. The Litigation Trustee, acting in the capacity as the Litigation Trustee or in any other capacity contemplated by this Trust Agreement or the Plan, shall not be personally liable in connection with the affairs of the Trust to the Trust or to any Person, except for such acts or omissions constituting fraud, willful misconduct, or gross negligence. The Litigation Trustee shall not be personally liable to the Trust or to any Person for the acts or omissions of any officer, employee, or agent of the Trust, unless the Litigation Trustee acted with gross negligence or willful misconduct in the section, retention, or supervision of such officer, employee, or agent of the Trust. Except in those situations in which the Litigation Trustee is not exonerated of personal liability in accordance with the foregoing, the Litigation Trustee (including each former Litigation Trustee) shall be indemnified by the Trust against, and held harmless by the Trust from, any losses, claims, damages, liabilities, or expenses (including attorney fees, disbursements, and related expenses) to which the Litigation Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Litigation Trustee in its capacity as Litigation Trustee, or in any other capacity contemplated by this Trust Agreement or the Plan or in connection with any matter arising out of or related to the Plan, this Trust Agreement, or the affairs of the Trust. If the Litigation Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Trust Agreement, or the affairs of the Trust, the Trust shall periodically advance or otherwise reimburse on demand the Litigation Trustee's reasonable legal and other expenses (including the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith, but the Litigation Trustee shall be required to repay promptly to the Trust the amount of any such advanced or reimbursed expenses paid to the Litigation Trustee to the extent that it shall be ultimately determined by Final Order that the Litigation Trustee engaged in fraud, willful misconduct, or gross negligence in connection with the complained of actions. The provisions of this section shall remain available to, and be binding on, any former Litigation Trustee or the estate of any deceased

Litigation Trustee.

**3.11    Reliance by Litigation Trustee.** The Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Litigation Trustee has no reason to believe is not genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed in such documents. The Litigation Trustee may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection regarding any action taken or suffered by the Litigation Trustee in accordance with such opinion. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court (or any other court of competent jurisdiction after the chapter 11 case is finally closed) concerning the Trust Property, the Plan, or any other document executed in connection therewith, and those instructions shall be full and complete authorization regarding any action taken or suffered by the Litigation Trustee in accordance with those instructions.

**3.12    Reliance by Persons Dealing With the Trust**. In the absence of actual knowledge to the contrary, any Person dealing with the Trust shall be entitled to rely on the authority of the Litigation Trustee to act in connection with the Trust Property, and shall have no obligation to inquire into the existence of such authority.

**3.13    Statement of Discharge and Discharge of Litigation Trustee.**

**3.13.1    Statement of Discharge**. The Litigation Trustee shall, on termination of the Trust or on the Litigation Trustee's resignation, removal, or death (in which case the Litigation Trustee's estate shall), render a statement of discharge containing the following information: (i) all assets and funds of the Trust originally charged under the Litigation Trustee's control; (ii) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, and income in connection with the Trust during the Litigation Trustee's term of service; and (iii) the ending balance of all assets and funds of the Trust as of the date of discharge. At the discretion of the Litigation Trustee, such statement may be audited by the independent accountants in accordance with generally accepted auditing standards.

**3.13.2    Approval of Statement of Discharge**.  The statement of discharge required by section 3.13.1 shall be filed with the Bankruptcy Court. Unless a majority of the Beneficiaries object to the approval of the statement of discharge within 30 days after the date on which such statement of discharge was filed, the withdrawing Litigation Trustee shall be discharged from all liability to the Trust, the Beneficiaries, and any Person who has had or may have an interest in the Trust or Trust Property for acts or omissions in the Litigation Trustee's capacity as the Litigation Trustee or in any other capacity contemplated by the Plan or this Trust Agreement.

**Trust Agreement for the MXP Operating, LLC Litigation Trust, Page 7**

**3.13.3 <u>Costs Relating to Statement of Discharge</u>**. The expenses of any accounting in connection with the statement of discharge shall be paid by the Trust as a cost and expense of the Trust out of the Trust Property.

**ARTICLE IV - <span style="font-variant:small-caps">Powers of the Litigation Trustee</span>**

**4.1** <u>**Title.**</u> Legal title to all Trust Property shall be vested in the Litigation Trustee.

**4.2** <u>**Management Power**</u>. Except as otherwise expressly limited in the Plan or this Trust Agreement, the Litigation Trustee shall have control and authority over the Trust Property, including the Causes of Action and other causes of action belonging to the Trust, and over the management and disposition of the Trust Property. Except as otherwise provided in this Trust Agreement, the Litigation Trustee need not obtain any Court order or approval in the exercise of any power or discretion conferred under this Trust Agreement, or account to any Court in the absence of a breach of fiduciary duty. The Litigation Trustee shall exercise its judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Property, giving due regard to the cost, risk, and delay of any course of action. In connection with the management and use of the Trust Property, the Litigation Trustee's powers (except as otherwise expressly limited in the Plan) shall include the following:

(i)     to accept the Trust Property;

(ii)    to reconcile, settle, object to or files motions to estimate General Unsecured Claims against Debtor and to investigate, prosecute, leave unasserted, abandon, or settle, Causes of Action that are Trust Property;

(iii)   to make or cause to be made Distributions of Trust Property in accordance with the terms of this Trust Agreement;

(v)     to engage in all acts that would constitute ordinary performance of the obligations of a trustee and to file all returns of the Trust, if any, required to be filed under applicable law;

(vi)    to obtain any and all bank statements, canceled checks, credit card statements, and other account information in the possession, custody or control of any non-Debtor regarding Debtor's bank, investment, credit card, and other financial accounts;

(vii)   to enforce the payment of notes or other obligations of any Person or to make contracts with respect to such enforcement, and to purchase insurance with such coverage and limits as the Litigation Trustee deems desirable;

(viii)  to appoint, engage, employ, supervise, and compensate Persons as may be necessary

or desirable, including consultants, accountants, technical, attorneys, agents, or depositories. The Litigation Trustee is specifically authorized to engage the Trustee and/or any firm in which the Trustee has an interest, as counsel for the Trust in any matter including (but not limited to) the prosecution of any Cause of Action or the objection to any General Unsecured Claim, however, the Litigation Trustee may not engage any Persons who are Unsecured Creditors or represented Unsecured Creditors;

(ix)     to the extent reasonably required to meet claims and contingent liabilities, or to maintain the value of Trust Property during liquidation, to invest and reinvest cash available to the Trust, pending distribution, and to liquidate such investments;

(x)     to determine the manner of ascertainment of income and principal, and the apportionment of income and principal, and the apportionment between income and principal of all receipts and disbursements, and to select an annual accounting period;

(xi)     establish such funds, reserves, and accounts within the Trust estate, as deemed by the Litigation Trustee in its discretion to be useful in carrying out the purposes of the Trust;

(xii)     subject to the provisions herein, to sue and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding related to Causes of Action;

(xiii)     delegate any or all of the discretionary power and authority conferred in this Trust Agreement at any time with respect to all or any portion of the Trust to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation;

(xiv)     to open any and all depository accounts for the benefit of the Trust deemed necessary by the Litigation Trustee in the exercise of its sole discretion and judgment;

(xv)     to deposit any Trust Property into any IOLTA account maintained by the Litigation Trustee at any federally insured depository institution;

(xvi)     to execute, deliver and perform such other agreements and documents and to take or cause to be taken any and all such other actions as it may deem necessary or desirable to effectuate and carry out the purposes of this Trust Agreement; and

(xvii)     undertake any action or perform any obligation provided for or required by this Trust Agreement.

**4.4     Employment and Compensation of Professionals**. The Litigation Trustee shall have the authority to employ and compensate attorneys, accountants, and other professionals (including a disbursing agent to make Distributions) as the Litigation Trustee may determine to be

necessary or appropriate in carrying out the provisions of the Plan and this Trust Agreement however, the Litigation Trustee may not engage any Persons who are Unsecured Creditors or represented Unsecured Creditors or members of the Administrative Committee. The Trust Property may pay the reasonable fees and expenses of such professionals as a cost and expense without application to the Bankruptcy Court. All fees and expenses of such professionals shall be paid out of the Trust Property. Further, the Litigation Trustee shall submit regular statements supporting any fees or expenses for review by the Administrative Committee. In the event that a Member of the Administrative Committee objects to the fees or expenses of any professional that cannot be informally resolved, the objecting Administrative Committee member may file an objection with the Bankruptcy Court and the Bankruptcy Court may determine the reasonable amount of fees and expenses to be paid to the professional.

## ARTICLE V - OBLIGATIONS OF THE LITIGATION TRUSTEE

**5.1    Records**. The Litigation Trustee shall maintain records and account books relating to the Trust Property, the management of the Trust and the Trust Property, and all transactions undertaken by the Litigation Trustee. The Litigation Trustee shall also maintain records and account books relating to all Distributions contemplated and made under the Plan.

**5.2    Causes of Action**.

**5.2.1    Investigation and Pursuit**. The Litigation Trustee shall investigate, evaluate, and prosecute all Causes of Action, including but not limited to causes of action under chapter 5 of the Bankruptcy Code, against any Person; provided, however, the Litigation Trustee may decide not to prosecute any Cause of Action that the Litigation Trustee reasonably believes would not be appreciably beneficial to the Trust.

**5.2.2    Compromise and Settlement**. The Litigation Trustee may compromise and settle any Cause of Action involving an amount in controversy of less than $100,000.00, without the necessity of Bankruptcy Court or Administrative Committee approval. The Litigation Trustee may also compromise any objection to Claim or motion to estimate any Claim without the necessity of Bankruptcy Court or Administrative Committee approval, if the result of such compromise is that the disputed Claim is an Allowed Claim of $50,000.00 or less. Provided, however, that any compromise and settlement agreement regarding any Cause of Action or Claim concerning a member of the Administrative Committee shall require either (a) the approval of a majority of the other disinterested members of the Administrative Committee, or (b) Bankruptcy Court approval.

## ARTICLE VI - ADMINISTRATION OF THE TRUST ESTATE

**6.1    Establishment of Reserves and Payment of Creditor Claims**.

**6.1.1   Reserve for Operating Expenses.** Before making any Distribution, the Litigation Trustee may fund an operating expense reserve with any available cash in an amount sufficient to pay the Litigation Trustee's reasonably estimated costs and expenses associated with the administration of this Trust.

**6.1.2   Contested Claims Reserve for Beneficiaries**. Before any Distributions, the Litigation Trustee shall establish a contested Claims reserve funded periodically with available cash in an amount sufficient to pay (i) all Allowed Claims of General Unsecured Creditors whose Distributions are unclaimed and (ii) all contested Claims pending a determination of their entitlement to Distributions under this Trust Agreement. When a contested Claim becomes an Allowed Claim, the Litigation Trustee shall release and distribute the funds reserved for the particular contested Claim from the contested Claim reserve. If the Bankruptcy Court disallows the contested Claim, the funds and interest and proceed thereon attributable to the contested Claim shall be part of the available cash or Trust Property, and shall be distributed in accordance with the Plan and this Trust Agreement.

**6.2   Distributions to Beneficiaries.**

**6.2.1   Distributions Generally.** Subject to establishing the reserves described above and any other limitations contained in this Trust Agreement, the Litigation Trustee shall make Distributions at any time the Litigation Trustee deems reasonable in the exercise of its good faith judgment and discretion.

**6.2.2   Distributions to Beneficiaries.** A Beneficiary shall receive at the time of any Distribution the Beneficiary's pro rata share of available cash based on the Beneficiary's Allowed Claim, until the Beneficiary's Allowed Claim is paid in full, without interest.

**6.3   Place and Manner of Payments or Distributions**. The Litigation Trustee shall make Distributions to the Beneficiaries by mailing the Distribution to the Beneficiary at (a) the Beneficiary's last known address, or (b) the Beneficiary's address stated in its proof of claim, if any, or (c) as listed in the Schedules of Assets and Liabilities filed by Debtor, or (d) at such other address as the Beneficiary shall have specified for payment purposes in a written notice to the Litigation Trustee. The Litigation Trustee may distribute any cash by wire, check, or such other method as the Litigation Trustee deems appropriate under the circumstances. Before receiving any Distributions, all Beneficiaries, at the Litigation Trustee's request, must provide to the Litigation Trustee written notification of their respective Federal Tax Identification Numbers or Social Security Numbers; otherwise, Litigation Trustee may suspend Distributions to any Beneficiary who has not provided its Federal Tax Identification Number or Social Security Number. If a Beneficiary does not provide the Litigation Trustee with its Federal Tax Identification Number or Social Security Number, as applicable, within six (6) months after written request is made (such written request being adequate if mailed by first class mail or any other manner deemed appropriate by the

**TRUST AGREEMENT FOR THE MXP OPERATING, LLC LITIGATION TRUST, PAGE 11**

Litigation Trustee), such Beneficiary waives its right to any Distribution under the Plan.

**6.4    Minimum Distributions**. To the extent a Distribution to a particular Beneficiary is less than $100.00, the Litigation Trustee may hold the Distribution until the final Distribution or until the aggregate of Distributions to the Beneficiary exceeds $100.00. If the final Distribution to a Beneficiary would be under $10.00, the Litigation Trustee is under no obligation to make the Distribution.

**6.5    Unclaimed or Undelivered Distributions.**

**6.5.1    Undeliverable Distributions.** If a Distribution to any Beneficiary is returned as undeliverable, the Litigation Trustee shall use reasonable efforts to determine the Beneficiary's then current address, and no further Distributions shall be made to the Beneficiary unless and until the Litigation Trustee is notified of the Beneficiary's then current address. If the Litigation Trustee is not notified in writing by the Beneficiary of such address change, such Beneficiary waives its right to any Distributions under the Plan.

**6.5.2    Treatment of Unclaimed or Undeliverable Distributions.** If any Person entitled to Distributions cannot be located at the time of any Distribution, or if a Distribution is unclaimed for a period of 90 days after the distribution has been sent to the Beneficiary, then, subject to the provisions of this section, (i) the Person shall no longer be deemed to be a Beneficiary, and (ii) any Distribution otherwise payable to the Person shall be part of the Trust Property free and clear of any Claim to such property by or on behalf of the Person (who shall be deemed to have released such Claim), and shall be otherwise distributed as provided in this Agreement, with such adjustments as are required to take into account that such Person is no longer a Beneficiary.

**6.6    Tax Matters.**

**6.6.1    Certain Income Tax Matters.** The general purpose of the Trust established under this Trust Agreement is to provide a mechanism for the liquidation of the Trust Property, and to distribute the proceeds of the liquidation, net of all expenses, charges, liabilities, and obligations of the Trust, to the Beneficiaries in accordance with the terms of the Plan and this Trust. The Trust will not conduct or engage in any trade or business activities, other than those associated with or related to the liquidation of the Trust Property and the Distributions to the Beneficiaries. During its existence, the Trust shall not receive or retain cash or cash equivalents in excess of a reasonable amount necessary to pay all Allowed Claims of the Beneficiaries, all expenses and all contingent liabilities (including those for Contested Claims). The Litigation Trustee shall use its continuing best efforts to dispose of the Trust Property, make timely Distributions, and shall not unduly prolong the duration of the Trust. The Litigation Trustee is authorized to take any action as may be necessary or appropriate to minimize any potential tax liability of the Trust and, thereafter, the

Beneficiaries arising out of the operations of the Trust. The Litigation Trustee is directed to allocate all costs, charges, expenses, and deductions, in whole or in part, to income or principal at such time and in such a manner as the Litigation Trustee shall determine will reduce or eliminate the Trust's taxes, if any. The Litigation Trustee shall file in a timely manner all tax returns that are required by applicable law by virtue of the existence and operations of the Trust. The Trust shall distribute, at least annually, all Trust income and gain, cash (whether or not allocable to income or principal, including all capital gains allocable to principal), any other Trust Property the Litigation Trustee in its discretion determines is properly distributable (whether out of income or principal), and liquidation proceeds to the Beneficiaries, after payment of expenses and liabilities, less the reasonable reserves for expenses and other costs. Additionally, the Litigation Trustee shall, at least annually, provide to Beneficiaries such information that is appropriate or necessary to enable the Beneficiaries to determine their respective tax obligations, if any, arising out of the operations of the Trust. No Beneficiary shall have any claim to or with respect to any specific property held in trust and shall have no claim to or for a distribution of property in kind.

**6.6.2   Withholding**. The Litigation Trustee may withhold from the amount distributable at any time to any Beneficiary such amounts sufficient to pay any tax or other charge that have been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States of America or of any state or political subdivision or entity by reason of any Distribution provided for under the Plan or this Trust Agreement, whenever such withholding is determined by the Litigation Trustee in its discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Litigation Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section. Notwithstanding the foregoing but without prejudice to the Litigation Trustee's rights, such Person shall have the right with respect to the United States of America, or any state, or any political subdivision or either, to contest the imposition of any tax or other charge by reason of any Distribution under the Plan.

### ARTICLE VII: TERMINATION

**7.1     Termination**. The Trust shall terminate on the earlier of (i) the date that is five (5) years after the date this Trust is created, or (ii) the distribution of all Trust Property, or (iii) the date on which the Litigation Trustee determines, with the approval of the Administrative Committee, that the purpose of the Trust have been substantially completed. Notwithstanding the foregoing, with Bankruptcy Court approval, the Litigation Trustee may extend the term of the Trust for one or more finite terms based on the particular facts and circumstances at that time, if it is in the best interest of the Beneficiaries and an extension is necessary to the purposes of the Trust. The Trust may not be terminated at any time by the Beneficiaries.

## ARTICLE VIII: MISCELLANEOUS PROVISIONS

**7.1     Administrative Committee:**

**7.1.1   Formation**. The Administrative Committee is established to consult with the Litigation Trustee regarding the Trust Property. The Administrative Committee shall only exist so long as there are at least two (2) creditors willing to serve. No compensation to the members of the Administrative Committee shall be paid by the Litigation Trustee; provided, however, that reasonable expenses of the Administrative Committee Members will be reimbursed by the Litigation Trustee from Trust Property. The Administrative Committee shall have standing as a party in interest to enforce the terms and provisions of this Agreement. The Administrative Committee members shall not be liable for any act done or omitted to be done as a member of the Administrative Committee while acting in good faith and the Trust shall indemnify and hold harmless each Administrative Committee member, and their respective agents, representatives, professionals, and employees, from and against and in respect of any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, gross negligence or fraud.

**7.1.2   Governance**. A simple majority of the then current Administrative Committee members must be present to constitute a quorum to conduct business. A member of the Administrative Committee may vote by written proxy, and such proxy shall be counted for the purpose of establishing a quorum. Meetings of the Administrative Committee may be held remotely, telephonically and/or virtually. Any proxy shall specify the particular issue or issues to which it pertains or may be general in nature. Each member of the Administrative Committee shall have one (1) vote. Except as otherwise provided herein, every act or decision done or made by a majority of the Administrative Committee members at a duly held meeting at which a quorum is present shall constitute the act of the committee. Members shall not participate in and shall abstain from any vote with respect to any claim objection, litigation or other matter directly involving such member. In the event that any voting member abstains from voting, the requirement of a majority for Administrative Committee action shall be reduced by one (1) vote for each member who abstains from voting.

**7.1.3   Meetings**. Meetings may be called by any two (2) members of the Administrative Committee on at least seventy-two (72) hours advance notice by telephone or electronic mail to each committee member. The primary purpose for the special meeting shall be set forth in the notice.

**7.2     Notices.**     Except as stated otherwise herein, all notices, reports, or other

communications required or permitted to be made under this Trust Agreement shall be in writing and shall be delivered by United States Mail, postage prepaid or by electronic mail. Notice mailed shall be effective on the date mailed. All other notices shall be effective on the date of delivery. Any Person may change the address for purposes of notices under this Trust Agreement by furnishing written notice to all other Persons identified above in this Article.

**7.3** **Amendment.** This Trust Agreement may be amended by (a) (i) the approval of the Litigation Trustee of such amendment, and (ii) the consent of a majority of the Administrative Committee, and (iii) the consent of a majority (determined by the amount of Allowed Claims) of the Beneficiaries, or (b) pursuant to an order entered by the Bankruptcy Court. This Trust Agreement may be amended by the Litigation Trustee without the approval of the Beneficiaries to correct typographical errors or if such amendment is not material, and in either case if such amendment does not adversely affect the interests of any Beneficiary, but such amendment shall not be effective until fifteen (15) days after the Beneficiaries shall have been given notice of such amendment.

**7.4** **Counterparts**. This Trust Agreement may be executed in one or more Counterparts, all of which shall be taken together to constitute one and the same instrument.

**7.5** **Governing Law; Severability**. This Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Texas. If it shall be determined by a Court of competent jurisdiction that any provision of this Trust Agreement shall be invalid or unenforceable under applicable law, such invalidity or unenforceability shall not invalidate the entire Trust Agreement. In that case, this Trust Agreement shall be construed so as to limit any impermissible term or provision so as to make it enforceable or valid within the requirements of applicable law, and, if such term or provision cannot be so limited, this Trust Agreement shall be construed to omit such invalid or unenforceable provisions provided that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, duly authorized as of the day and year first above written.

MXP Operating, LLC.

By: _____
Name: Rachel Patman
Title: Managing Member

**ACCEPTANCE OF APPOINTMENT**

**TRUST AGREEMENT FOR THE MXP OPERATING, LLC LITIGATION TRUST, PAGE 15**

I hereby accept appointment as the initial Litigation Trustee under the terms of this Trust Agreement on this the _____ day of _____, 2024

_____

_____

Litigation Trust Agreement Draft v.2 9.2.2021.docx

| | | | | | | |
|---|---|---|---|---|---|---|
| **Well Name:** All ASE wells | | | **State:** Oklahoma | | **Project Description:** | MXP Reorganization Plan |
| **Field:** Seminole - Booch Sand | | | **County:** Seminole | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Start date (mm/dd/yy)** | 02/01/24 | | **Operating cost ($/mo)** | 55,000 | **Working Int (%)** | 100.00 |
| | | | **Op cost Escalator (%/yr)** | - | **Net Revenue Int (%)** | 75.50 |
| | **bopd** | **Mcfd** | **SWD cost ($/bw)** | - | | |
| **Initial rate** | 150 | 100 | **Gas Sev. Tax (%)** | 7.00 | **Oil Price ($/bo)** | 73.33 |
| **Initial Annual decline (%)** | 70.00 | 70.00 | **Oil Sev. Tax (%)** | 7.00 | **Gas Price ($/Mcf)** | 2.53 |
| **Hyp. Exp. (0 for strt line)** | 1.00 | 1.00 | | | **Price Escalator (%/yr)** | - |
| **Straight line tail decl. (%)** | 5.00 | 5.00 | **Initial CapExp ($)** | - | **Max Oil Price ($/bo)** | 100.00 |
| **WOR** | 3.24 | | **Second CapExp ($)** | - | | |
| | | | **# of Months after Initial** | | **Max Gas Price ($/Mcf)** | 4.00 |

*Oil and gas prices as of 1/19/2024 held flat*
**Gas price and Op cost cap at same time as oil price**

| Month/Year Ending | Gross Oil (bbls) | Gross Gas (Mcf) | Net Oil (bbls) | Net Gas (Mcf) | Oil Price ($/bo) | Gas Price ($/Mcf) | Oil Revenue ($) | Gas Revenue ($) | Total Revenue ($) |
|---|---|---|---|---|---|---|---|---|---|
| 2024-Feb-29 | 4,348 | 2,899 | 3,283 | 2,188 | 73.33 | 2.53 | 240,716 | 5,537 | 246,252 |
| 2024-Mar-31 | 3,968 | 2,645 | 2,996 | 1,997 | 73.33 | 2.53 | 219,696 | 5,053 | 224,749 |
| 2024-Apr-30 | 3,650 | 2,433 | 2,755 | 1,837 | 73.33 | 2.53 | 202,054 | 4,647 | 206,701 |
| 2024-May-31 | 3,378 | 2,252 | 2,551 | 1,700 | 73.33 | 2.53 | 187,036 | 4,302 | 191,338 |
| 2024-Jun-30 | 3,145 | 2,096 | 2,374 | 1,583 | 73.33 | 2.53 | 174,097 | 4,004 | 178,101 |
| 2024-Jul-31 | 2,941 | 1,961 | 2,221 | 1,480 | 73.33 | 2.53 | 162,833 | 3,745 | 166,578 |
| 2024-Aug-31 | 2,762 | 1,842 | 2,086 | 1,390 | 73.33 | 2.53 | 152,938 | 3,518 | 156,456 |
| 2024-Sep-30 | 2,604 | 1,736 | 1,966 | 1,311 | 73.33 | 2.53 | 144,177 | 3,316 | 147,493 |
| 2024-Oct-31 | 2,463 | 1,642 | 1,860 | 1,240 | 73.33 | 2.53 | 136,366 | 3,137 | 139,502 |
| 2024-Nov-30 | 2,336 | 1,558 | 1,764 | 1,176 | 73.33 | 2.53 | 129,358 | 2,975 | 132,333 |
| 2024-Dec-31 | 2,222 | 1,482 | 1,678 | 1,119 | 73.33 | 2.53 | 123,035 | 2,830 | 125,865 |
| 2025-Jan-31 | 2,119 | 1,412 | 1,600 | 1,066 | 73.33 | 2.53 | 117,301 | 2,698 | 119,999 |
| 2026-Jan-31 | 19,820 | 13,213 | 14,964 | 9,976 | 73.33 | 2.53 | 1,097,315 | 25,239 | 1,122,554 |
| 2027-Jan-31 | 12,757 | 8,505 | 9,632 | 6,421 | 73.33 | 2.53 | 706,301 | 16,246 | 722,547 |
| 2028-Jan-31 | - | - | - | - | - | - | - | - | - |
| 2029-Jan-31 | - | - | - | - | - | - | - | - | - |
| 2030-Jan-31 | - | - | - | - | - | - | - | - | - |
| 2031-Jan-31 | - | - | - | - | - | - | - | - | - |
| 2032-Jan-31 | - | - | - | - | - | - | - | - | - |
| 2033-Jan-31 | - | - | - | - | - | - | - | - | - |
| **TOTAL** | **68,514** | **45,676** | **51,728** | **34,485** | | | **3,793,221** | **87,248** | **3,880,469** |

| Year Ending | Operating Cost ($) | Total Sev. Tax ($) | Net Income before Capex ($) | Capital Inv. ($) | Undisc CF ($) | Cum UCF ($) | Present Value @ 10% ($) | Cum PV-10 ($) |
|---|---|---|---|---|---|---|---|---|
| 2024-Feb-29 | 55,000 | 17,238 | 174,015 | - | 174,015 | 174,015 | 172,638 | 172,638 |
| 2024-Mar-31 | 55,000 | 15,732 | 154,017 | - | 154,017 | 328,031 | 151,589 | 324,227 |
| 2024-Apr-30 | 55,000 | 14,469 | 137,232 | - | 137,232 | 465,263 | 134,001 | 458,228 |
| 2024-May-31 | 55,000 | 13,394 | 122,944 | - | 122,944 | 588,208 | 119,100 | 577,328 |
| 2024-Jun-30 | 55,000 | 12,467 | 110,634 | - | 110,634 | 698,842 | 106,327 | 683,655 |
| 2024-Jul-31 | 55,000 | 11,660 | 99,917 | - | 99,917 | 798,759 | 95,268 | 778,922 |
| 2024-Aug-31 | 55,000 | 10,952 | 90,504 | - | 90,504 | 889,263 | 85,609 | 864,531 |
| 2024-Sep-30 | 55,000 | 10,325 | 82,169 | - | 82,169 | 971,432 | 77,110 | 941,642 |
| 2024-Oct-31 | 55,000 | 9,765 | 74,737 | - | 74,737 | 1,046,169 | 69,581 | 1,011,223 |
| 2024-Nov-30 | 55,000 | 9,263 | 68,070 | - | 68,070 | 1,114,239 | 62,872 | 1,074,095 |
| 2024-Dec-31 | 55,000 | 8,811 | 62,054 | - | 62,054 | 1,176,293 | 56,863 | 1,130,958 |
| 2025-Jan-31 | 55,000 | 8,400 | 56,600 | - | 56,600 | 1,232,893 | 51,454 | 1,182,412 |
| 2026-Jan-31 | 660,000 | 78,579 | 383,975 | - | 383,975 | 1,616,868 | 334,722 | 1,517,135 |
| 2027-Jan-31 | 605,000 | 50,578 | 66,969 | - | 66,969 | 1,683,837 | 53,859 | 1,570,994 |
| 2028-Jan-31 | - | - | - | - | - | - | - | - |
| 2029-Jan-31 | - | - | - | - | - | - | - | - |
| 2030-Jan-31 | - | - | - | - | - | - | - | - |
| 2031-Jan-31 | - | - | - | - | - | - | - | - |
| 2032-Jan-31 | - | - | - | - | - | - | - | - |
| 2033-Jan-31 | - | - | - | - | - | - | - | - |
| **TOTAL** | **1,925,000** | **271,633** | **1,683,837** | **-** | **1,683,837** | | **1,570,994** | |

| Disc Rate | Present Value ($) | | |
|---|---|---|---|
| 0% | 1,683,837 | **Return on Investment** | no CAPEX |
| 10% | 1,570,994 | **Rate of Return (%)** | no CAPEX |
| 20% | 1,478,457 | | |
| 30% | 1,401,078 | **Payout date** | no CAPEX |
| 40% | 1,335,317 | **Payout months** | no CAPEX |
| 50% | 1,278,661 | | |
| 60% | 1,229,275 | | |
| 70% | 1,185,790 | | |
| 80% | 1,147,164 | | |
| 90% | 1,112,588 | | |